THOMPSON, J.
The plaintiffs, the Motor League of Louisiana, an incorporated association domiciled in the city of New Orleans, and having some 1,400 members, and 25 other citizens and taxpayers of said city, instituted this mandamus proceeding against the State Treasurer to compel him to place to the credit of or pay into the special fund known as state highway fund No. 2, Chef Menteur and Hammond-New Orleans state highways, all motor vehicle licenses collected from the parishes of Orleans, Jefferson, St. Charles, St. John the Baptist, Tangipahoa, and St. Tammany.
The authority for the demand, it is claimed, is given by section 2 of Act IS, Extra Session of 1918 (a constitutional amendment), which required all motor vehicle licenses collected from the said parishes under the provisions of Act 260 of 1914 to be paid by the State Treasurer into the special fund hereinabove mentioned, which fund was created by the said act. This legislation, it is asserted, was not abrogated nor affected, but was left in full force and effect, by the Constitution of 1921.
An exception of no cause of action was filed along with the answer of defendant, under which it is contended that by the Constitution of 1921 (section 22, art. 6) only so much of the licenses collected from the group of parishes heretofore mentioned as will be equal to the licenses provided for by Act 260 of 1914 can be paid by the State Treasurer into the special fund in question, and that the said Treasurer is without authority to pay into said special highway fund any greater amount.
The case was tried on the merits in the *701 lower court, but tbe judge on final hearing sustained the exception of no cause of action, and dismissed the proceeding.
A reference to the legislation pertaining to the issue presented is necessary to an intelligent understanding and a correct decision of the question involved. It is a noteworthy fact that not earlier than 1914 were vehicles designed and intended for use on the public highways and operated by other than muscular power defined by any legislation of this state, or made a subject for revenue and taxation. Act 260 of that year undertook to define such vehicles for the purposes of taxation, and classified them into three subdivisions, viz.: Motor truck, motorcycle, and motor car. A flat license of $7.50 was levied on the first class; a flat fee of $2 on the second class; and 25 cents for each horse power, with a minimum fee of $5, on the third class.
These license fees were to be collected by the Secretary of State, and by him deposited in one of the state bank depositaries to the credit of a special fund, but later were to be paid over to the parish treasurer of the parish from which collected, except for the parish of Orleans. In that parish the fund was to be paid to the commissioner of finance of the city of New Orleans to form a special highway fund for the city of New Orleans, and to be used exclusively for the purpose of constructing, operating, and maintaining highways, roads/ etc., within the city of New Orleans and parish of Orleans.
In 1918, by Act 18, the Legislature submitted an amendment to the Constitution of 1913, and it was adopted in November, 1918. That amendment authorized the State Highway Engineer to let contracts for the construction and completion of the Ohef Menteur road from a stated point in the parish of Orleans to a designated point in the parish of St. Tammany, and also for the construction and completion of a model state highway on such route, as might be selected by the highway department, from New Orleans to the town of Hammond.
In order to provide funds for the construction, completion, and maintenance of the said two roads, the Secretary of State was required to deposit with the State Treasurer, for the account of the State Highway Department, all motor vehicle licenses collected under the provisions of Act 260 of 1914 from the parishes of Jefferson, St. Charles, St. John the Baptist, Tangipahoa, St. Tammany, and Orleans; and the state treasurer was required to" pay the said licenses, so collected and turned over to him, into a special fund to be known as “state highway fund No. 2, Chef Menteur and Hammond-New Orleans state highways.” In addition to the motor vehicle licenses paid into said fund from the parishes named, the State Treasurer was required to pay into said fund such portion or a sufficient amount out of the special road tax collected under article 291, Constitution of 1913, from the parish of Orleans, as might be necessary to create and maintain in said fund a sum of $60,000 per year.
The fund thus formed was specially set apart and dedicated for the purpose of paying any and all contracts theretofore made and thereafter to be made, as well as any and all bonds, notes, or certificates of indebtedness made or issued by the board of liquidation of the state debt, to provide moneys for the costs of constructing the said two highways.
The board of liquidation of the state debt was authorized to issue bonds in anticipation of the collection and receipt of the taxes and licenses set apart and dedicated to the said state highway fund No. 2, Chef Menteur and Hammond-New Orleans state highways, payable exclusively from said special fund. The bonds authorized to be issued were not to exceed $700,000.
The Constitution of 1921 authorized the *704 establishment and maintenance of a general and state-wide system of hard surface state highways and bridges under the supervision of the Board of State Engineers, and provided for a general highway fund to be derived from the following sources: On automobiles for private use an annual minimum license of $15, to be graded up from that amount based upon horse power. On trucks or automobiles used for transportation of passengers or freight, $25, to be graded up based on horse power and carrying capacity or tonnage. On all motorcycles, $5, and to be graded up based on horse power and carrying capacity. It was also provided that:
“All licenses collected, as above provided, in the parishes covered by the provisions of Act 18 of the Special Session of the Legislature of 1918, to an amount therein authorized, shall be dedicated and set aside as provided in said act.” Section 22, art. 6, Constitution of 1921.
Section 24 of article 6 of said Constitution provides:
“Nothing in this Constitution shall affect the bonds issued under Act No. 18 of the Special Session of the Legislature of 1918 for the building of the ‘New Orleans-Chef Menteur’ and the ‘New Orleans-Hammond’ highways, and said bonds thus issued in principal and interest shall be paid as provided in said act.”
In carrying out section 22 of article 6 of the Constitution the Legislature of the Extra Session of 1921, by Act No. 95 created a highway commission, and provided a system of hard surface state highways to be constructed and maintained out of the general highway funds as provided by article 6 of said Constitution. The system thus provided consisted of 98 different well-defined routes, and among them was included, as a part of No. 2, the road from Chef Menteur to the Mississippi line near Logtown, and as a part of No. 33 the road from New Orleans to Hammond.
The act just referred to by section 11 followed section 24, art. 6, of the Constitution, to the effect that none of its provisions should affect the bonds issued pursuant to Act 18 of the Extra Session of 1918.
It was provided further in said Act 95 of the Extra Session of 1921 that any parish which shall have completed such roads as may be a part of the system of state highways shall be given credit for such improvement on the basis of the value thereof, and that whenever it is necessary in the judgment of the Commission to proceed with the improvement of any road or roads composing the system of state highways for the improvement of which the police jury or other local authorities shall have failed-to make application to the Commission it (the Commission) shall direct the State Highway Engineer to proceed with the improvement of any such road and to pay the entire cost from the general highway fund, and no further work or improvement of state highways in such subdivisions shall be undertaken until the general highway fund shall be reimbursed an amount not to exceed 25 per cent, of the amount so advanced on the said local subdivision. It was specially provided that the funds dedicated by Act 18 of Extra Session of 1918 for the construction of that portion of routes Nos. 2 and 33, known as the Chef Menteur and Hammond-New Orleans state highways, shall be considered in lieu of any and all aid that might be required under the provisions of this act from said parishes or any subdivision thereof through which said roads traverse, and no additional aid shall be required by said Highway Commission of said parishes or any subdivision thereof "in connection with the construction of said highways.
The obvious reason for this provision was that the state had taken over the construction of the two named roads by the act of 1918, a fund had already been received and dedicated to the completion of said roads, and it was but fair and just to relieve the *705 said six parishes from any further contribution to the building of said roads.
It is to be observed that no change in the rate of motor vehicle licenses, nor in the manner of collecting the same, nor in the application of the funds derived therefrom, as provided in Act 260 of 1914, was made until the adoption of the Constitution of .1921, except as found in Act 18 of the Extra Session of 1918. The only change in the latter act was to place the construction of the two roads, the Chef Menteur and Hammond roads under the control and supervision of the State Highway Engineer, and to withdraw from the parishes of Orleans, Jefferson, St. Charles, St. John the Baptist, Tangipahoa, and St. Tammany the licenses collected under the act of 1914, and to dedicate the same to the payment of the bonds authorized to be issued by said act.
It is quite clear that the fund provided to meet the bond issue has not been impaired nor affected by the Constitution of 1921, nor by any legislation passed in pursuance of said Constitution.
On the contrary, the state has by the said Constitution and by Act 95 of the Extra Session of .1921 solemnly recognized and ratified the said bonds, and guaranteed their payment in full, in the manner and to the same extent as provided in said act of 1918. As heretofore stated, a sum of $60,000 per year was to be maintained to the credit of the state highway fund No. 2, Chef Menteur and Hammond roads, from the licenses as levied by the act of 1914, to meet the bonds and interest as they matured, and the evidence shows that an amount largely in excess of the sum required has been kept to the credit of the said fund, and this without taking any portion of the tax collected under article 291, Constitution of 1913.
The bondholders are not before the court complaining, and they have no just reason to complain so long as the fund dedicated to the payment of the bonds is maintained as was provided for when said bonds were authorized to be issued. They certainly have no concern with what disposition the state makes of the excess licenses levied by the Constitution of 1921 over that authorized by the act of 1914. The apprehension that the rights of the bondholders have been or will be jeopardized by applying the said excess of licenses, from the six parishes named to the general’ highway fund has no basis.
There is no reason, it would seem, why the fund for the construction of the two roads should be increased more than double by taking away from the general fund all of the licenses from the six parishes named, in excess of the amount reserved and necessary to protect the contract of the state under the act of 1918.
There was possibly some good reason in 1918 for throwing into one fund to be used for the construction of the two roads all of the motor vehicle licenses collected from the six parishes under the act of 1914, since the said roads traversed the said parishes, and they were all directly interested. But, since the state has established a general, comprehensive, state-wide highway system, which includes the two roads in question, and has provided a general fund for that purpose, levied alike on motor vehicles throughout all of the parishes, there is and can be no real reason suggested why the six parishes should be segregated from the balance of the state or excepted from the general system, and all of the licenses from said parishes applied exclusively to the two roads which traverse, and to the extent only that they do traverse, the territory of the said six parishes.
It can hardly be said that the convention intended to create a separate and distinct road district out of the six parishes named, and to apply to the roads named all of the motor vehicle licenses collected from said *708 six parishes, and yet that is what the contention of ,the plaintiff in effect amounts to.
No justification for the position of plaintiffs can be found in the language of either the Act of 1918 or in that of section 22 of article 6 of the Constitution of 1921.
Section 2 of Act 18 of Extra Session of 1918 provides that, all motor vehicle licenses collected under the provisions of the act of 1914 from the six parishes named shall be paid into a special fund to be known as “state highway fund No. 2, Chef Menteur and Hammond-New Orleans state highways.” There can be no mistake as to the meaning of the language used. It is unambiguous, and can, by no method of construction, be interpreted to mean all licenses levied or that may be levied in the future under any law that may be enacted by the constitutional convention or by the Legislature shall be paid into the special fund created.
But the licenses, and those only, as fixed and determined in the act of 1914, or an equivalent if that act should be superseded, were meant to be paid into said fund. To hold otherwise would be to write out of the act the words “under the provisions of the act of 1914,” and to read into the act the words “all licenses now collected or hereafter to be collected under any law that may be passed from the parishes named shall be paid into,” etc. Nor can it be properly said that the language made use of was either accidental or merely descriptive. It was a substantive provision of the law. The lawmakers had in view the raising of a sufficient fund to meet an obligation the state was about to incur, and, to make that fund fixed and definite, it was declared that the fund should be formed out of certain revenues, and those revenues were declared to be the motor licenses from the designated parishes, as levied by the act of 1914.
The act of 1914- was superseded by the Constitution of 1921 with respect to license taxes on motor vehicles. But in taking care of the funds to meet the bonds issued under act 18 of 1918 on the basis of the licenses as fixed by the act of 1914, the Constitution declared that the licenses therein provided, collected in the parishes covered by the provisions of act 18 of the Special Session of the Legislature of 1918, to an amount therein authorized, shall be dedicated and set aside as provided in said act. We fail to discover any room for doubt as to the meaning of the term “to an amount therein authorized,” when considered in the light of the several acts and constitutional provisions herein referred to.
We think it quite clear that of the licenses collected from the six parishes, as fixed by the Constitution itself, to an amount equivalent to the licenses authorized to be collected under the act of 1914, and no more, were in the future to be dedicated to the fund created by the act of 1918. Any other construction placed on the provision, particularly the construction contended for by the plaintiffs, would write out of the provision the words “to an amount therein authorized,” and give to the section a meaning never intended by the framers of the Constitution. Counsel argues that the quoted words are entirely meaningless, because Act 18 of Extra Session of 1918 never authorized either the collection of any amount of licenses or dedicated any amount of licenses. It was not necessary for said act to authorize the collection of any licenses. The collection was already authorized by the act of 1914. But Act 18 did make a dedication to the state highway fund No. 2, and the amount so dedicated was the amount authorized to be collected from said parishes by the act of 1914, and that is the amount dedicated to said fund out of the licenses collected from the said parishes under the Constitution of 1921.
The State Treasurer cannot be compelled to place to the credit of the state road fund *709 any greater amount of tlie licenses collected under the Constitution from the parishes named than the amount as authorized to be collected under the act of 1914.
The judgment appealed from is therefore affirmed at the costs of the plaintiffs and appellants. *